**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 1, 2005
Decided June 29, 2005

**Before**

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 04-2660

| | |
|---|---|
| MOHAMED SALEEM HANAFI BACHA,<br>    *Petitioner,*<br><br>    *v.*<br><br>ALBERTO R. GONZALES, Attorney General of the United States of America,<br>    *Respondent.* | Petition for Review of an Order of the Board of Immigration Appeals<br><br>No. A78 642 231 |

**O R D E R**

Sri-Lankan native Mohamed Saleem Hanafi Bacha, a Muslim Moor who speaks Tamil, applied for asylum, withholding of deportation, and relief under the Convention Against Torture. The immigration judge denied his application, and the Board of Immigration Appeals affirmed, adopting the IJ's adverse credibility determination. Hanafi Bacha did not petition this court for review of the BIA's decision, but instead filed a motion for reconsideration, which the BIA denied. Hanafi Bacha now petitions for review of the BIA's denial of his motion for reconsideration, and our review is limited to the merits of that motion. We deny the petition because none of Hanafi Bacha's arguments relate to the motion for reconsideration.

# I

Three main ethnic groups populate Sri Lanka. The Sinhalese, who are mostly Buddhists, comprise 74 percent of the population and control the government and security forces. Department of State, BACKGROUND NOTE: SRI LANKA (Feb. 2005), *available at* http://www.state.gov/r/pa/ei/bgn/5249.htm. The remainder of the population consists of mostly Hindu-practicing Tamils, who account for 18 percent of the population, and Muslim Moors at 7 percent. *Id.* From 1983 to 2001 the Liberation Tigers of Tamil Eelam (LTTE), a Tamil guerilla group seeking a separate state in the northern and eastern regions of Sri Lanka, engaged in armed resistence against the Sinhalese-majority government. Department of State, 2003 COUNTRY REPORTS ON HUMAN RIGHTS PRACTICES: SRI LANKA (Feb. 25, 2004), *available at* http://www.state.gov/g/drl/rls/hrrpt/2003/27951.htm. Presently, both sides are respecting a cease-fire, but peace negotiations have broken down. *Id.* Since the start of the unrest, Tamil-speaking Muslims have actively sought to differentiate themselves from the LTTE and Tamils. See Nirupama Subramanian, *LTTE and Muslims*, HINDU (INDIA), Oct. 21, 2003, *available at* 2003 WLNR 9312513 (explaining that "Muslims—who are linguistically Tamil—decided to strengthen a separate religion-based identity rather than continue to affiliate themselves with Hindu and Christian Tamils on the basis of language" after forced evacuation of 100,000 Muslims by LTTE in 1990); *Sri Lanka's Muslims Worried over New Minority Status*, SOUTH CHINA MORNING POST, Nov. 4, 2002, *available at* 2002 WLNR 4466323 (Tamil-speaking Muslims have sought separate ethnic and cultural identity since LTTE began armed struggle but have not aligned with government).

Fleeing from alleged persecution in Sri Lanka stemming from these ethnic divisions, Hanafi Bacha entered the United States on July 8, 1999, on a one-month business visa, which was extended for an additional six months. Several months after his visa expired in July 2000, Hanafi Bacha's lawyer (who still represents him) assisted him in filing an asylum application alleging persecution based on ethnicity, social group, and political opinion. Hanafi Bacha identified his ethnicity as Tamil and his religion as Muslim. His wife, also allegedly an ethnic Tamil, stayed in Sri Lanka. According to Hanafi Bacha, the Sinhalese-majority government of Sri Lanka "detains, tortures and persecutes" all ethnic Tamils because the government suspects them all—regardless of their "innocence"—of being members of the LTTE. In his application Hanafi Bacha said he was "harassed interrogated and detained many times" because he is Tamil. He finally was "forced to flee" for his life or face the "very real prospect of 'disappearing,'" he said, when security forces at the Colombo airport "attempted to take" him into custody "without any charges." This "flight" at the airport, Hanafi Bacha wrote,

made him "a larger target" than he was already because of his ethnicity, and thus he fears being "targeted for arrest" upon return to Sri Lanka.

Hanafi Bacha also described in his application the arrest of two Tamil employees at his textile shop in November 1998. According to his account, a government security force searched the quarters at the shop where the two lived with a Muslim employee and found documents linked to the LTTE. The security force arrested the two and proceeded to Hanafi Bacha's house to question him. Alerted that the security force was on its way, Hanafi Bacha left the house, fearing that they were coming to arrest him. After that, he continued, the security forces returned to his house on "many occasions," and so he went into hiding and fled on July 8, 1999, to the United States. Because he could not manage his store from the United States, Hanafi Bacha had to close the business. His wife advised him in a telephone conversation that "every other day" the security forces "come and terrorize her," and so he should not return.

Attached to Hanafi Bacha's application are several documents that allegedly corroborate his claim of persecution. There is an arrest warrant (and partial English translation) dated July 12, 1999—four days after he left the country—seeking Hanafi Bacha for his "involv[ement] in terrorist activities." Also included is a copy of a letter Hanafi Bacha sent from the United States in March 2000 canceling the lease for his store and transferring his business to another. But the letter also reveals that he renewed his lease in April 1999, several months after his two employees were allegedly arrested and he went into hiding. His attached birth certificate, moreover, identifies both of his parents' ethnicity as Moor, not Tamil.

Hanafi Bacha sent these documents with a packet of information to Dr. Paul Joseph White, a researcher at the University of Sydney (Australia) who studies "situations of conflict," primarily in the Middle East and South Asia. White testified by phone as an expert at Hanafi Bacha's asylum hearing in January 2003. White first provided background about the war in Sri Lanka between the Sinhalese majority government and the LTTE. According to White, security forces battling the LTTE have systematically targeted civilian Tamils for arbitrary arrest, rape, and forced relocations. Despite a current cease fire, White attested, the government and Sinhalese majority still persecute civilian Tamils. If a Tamil is suspected of sympathizing with LTTE militants, "it is the same as if he was being a guerilla—a terrorist guerilla"—and he will likely be "beaten and probably tortured."

Turning to Hanafi Bacha's specific situation, Dr. White appeared to assume that Hanafi Bacha is ethnically Tamil, explaining that Sri Lankan Muslims are "a mixture of different races," including Tamil, though almost all Tamils are Hindus. If "he is as he

appears to be given the documents," White declared, Hanafi Bacha would be "in serious danger" if returned to Sri Lanka because he is sought by the government for sympathizing or assisting the LTTE. White suggested that Hanafi Bacha's Muslim identity makes the situation "a little bit more dangerous" because "they're sort of not loved by nobody," but added that "the primary problem he faces is that he's a Tamil who has been accused apparently of supporting" the LTTE.

Hanafi Bacha, however, is a Moor, not a Tamil, notwithstanding his representations in his asylum application and initial testimony. When confronted with his birth certificate identifying both parents as Moors, Hanafi Bacha conceded that he considers himself ethnically a Muslim Moor even though he is a Tamil speaker (and perhaps for that reason sometimes considered to be a Tamil). Hanafi Bacha's ethnicity, however, was not the most significant inconsistency between his asylum application and his testimony. At the hearing Hanafi Bacha also admitted that he never was harassed, interrogated, or detained by security forces despite statements in his asylum application to the contrary. And Hanafi Bacha's testimony revealed that the account in his asylum application of security forces' trying to detain him at the Colombo airport was fiction. Hanafi Bacha admitted at the hearing to these inaccuracies but gave no explanation for their occurrence.

Hanafi Bacha testified to only one event consistent with statements in his asylum application: the weekend arrest of his two Tamil employees at his store in November 1998 after a government security force found documents relating to the LTTE movement among their possessions. Hanafi Bacha recounted that the security force next went to find him that night but he "didn't have the opportunity to meet them." He learned about the arrests the next day from the Muslim employee, who was not arrested. That Monday a security force returned to the shop looking for Hanafi Bacha, but he was in another town purchasing textiles. According to Hanafi Bacha, when he heard that the security force wanted to speak with him and, he assumed, arrest him, he fled to a village in the jungle and hid for eight months. Hanafi Bacha used his time in the jungle to plan an escape from Sri Lanka, procuring necessary travel papers and making arrangements to leave with the assistance of an agent. In a confusing line of testimony, Hanafi Bacha could not explain how or why he renewed the lease for his store six months after going into hiding, all while planning to leave the country. He maintained that he intended to return to Sri Lanka in January 2000, but changed his plans after his wife and mother told him that the security forces had an arrest warrant for him.

The administrative record also includes the 1999 State Department country report and articles documenting the abuses committed by the Sinhalese majority against suspected LTTE members and sympathizers. But the record is equally replete

with examples of atrocities committed by the LTTE against civilians. The only targeting of Muslims discussed in the documents was done by the LTTE, not the government.

As relevant here, the IJ denied asylum primarily because he concluded that Hanafi Bacha's story was not "plausible, credible or true." In support of his adverse credibility determination, the IJ noted that Hanafi Bacha in his asylum application misrepresented his ethnicity and admittedly fabricated his past encounters with Sri Lankan security forces, in particular the events at the Colombo airport that supposedly led him to flee. The IJ also discredited Hanafi Bacha's assertion that he was in hiding and planning to leave Sri Lanka, given that he renewed his lease during that time period. And the IJ questioned whether the security forces intended to arrest Hanafi Bacha, given that the only evidence of this was based on the alleged detention of two of his employees, which the IJ considered vague, and the questionable arrest warrant. Finding that Hanafi Bacha did not meet the requirements for asylum, the IJ concluded that he necessarily failed to satisfy the higher burden for withholding of deportation and relief under the Convention Against Torture.

Appealing the IJ's decision, Hanafi Bacha asserted that the adverse credibility determination was based on immaterial inaccuracies that were, in any event, "fully explained" during his testimony. But confusion over one of these allegedly "nonmaterial" inconsistencies—his true ethnicity—continued to plague him in the appeal. Still equating speaking the Tamil language with *being* Tamil, Hanafi Bacha first argued that, because "he is Tamil," the security forces imputed to him political support for the LTTE and thus the IJ erred in concluding that his resulting need to hide from the security forces did not amount to past persecution. At a later point in his brief, however, Hanafi Bacha conceded that calling himself ethnically Tamil was inaccurate, but glossed over the misrepresentation as immaterial even though his claim for asylum relied on his purported membership in the Tamil minority.

The BIA upheld the denial of asylum in April 2004 based on the IJ's adverse credibility determination. The BIA cited Hanafi Bacha's failure to explain "numerous inconsistencies," including his initial representation that he was ethnically Tamil and later admission that he spoke Tamil but was not ethnically Tamil, and his retraction at the hearing of the statements in his application about being harassed, interrogated, and detained by security forces. Instead of petitioning this court for review of the BIA's decision, Hanafi Bacha filed a motion to reconsider with the BIA that rehashed his previous challenge to the credibility finding. The BIA denied Hanafi Bacha's motion in June 2004, pointing out that he raised no new arguments and had not shown its previous decision to be "defective." Only then did Hanafi Bacha petition for review in this court.

**II**

Hanafi Bacha's petition for review of the denial of his motion for reconsideration is all that is before us, and so we have jurisdiction to review only those issues raised in that motion and not the underlying asylum ruling. *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004) (improper to raise argument challenging underlying deportation order where petitioner sought judicial review only of denial of motion for reconsideration); *Laboski v. Ashcroft*, 387 F.3d 628, 632 (7th Cir. 2004) (refusing to determine merits of IJ's decision because jurisdiction limited to review of denial of motion for reconsideration). Despite this jurisdictional limit, Hanafi Bacha devotes two of his three arguments to the underlying decision. In those two arguments, Hanafi Bacha contends that (1) the IJ erred in refusing permission to tender unspecified documents in support of his asylum application; and (2) the IJ's credibility determination is not adequately supported by the record. Both contentions are foreclosed at this point, because they are directed at the IJ's decision as affirmed by the BIA in its April 2004 order, which we have no jurisdiction to review. (The first contention suffers from the additional shortcoming that Hanafi Bacha never presented it to the IJ or the BIA.)

In any event, even if Hanafi Bacha had tried to frame the credibility argument as a challenge to the denial of his motion for reconsideration, he would get nowhere. We review the BIA's denial of a motion for reconsideration for abuse of discretion. 8 U.S.C. § 1003.2(a); *Laboski,* 387 F.3d at 631. In moving for reconsideration, a petitioner asks the BIA to "reexamine its decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked." *Matter of Cerca*, 20 I. & N. Dec. 339, 402 n.2 (BIA 1991) (internal quotation marks and citation omitted). A motion to reconsider that simply rehashes previous arguments gives the BIA "no reason to change its mind" and will not prevail. *Ahmed*, 388 F.3d at 249; see *Strata v. Ashcroft*, 388 F.3d 651, 655 (8th Cir. 2004).

In this case Hanafi Bacca's motion for reconsideration is virtually a replica of the credibility argument in his initial appeal to the BIA. Having been presented with no new reason to reexamine its original deportation order, the BIA was not required to grant reconsideration. See *Ahmed*, 388 F.3d at 249. Furthermore, this regurgitated discussion still ignores the implication of Hanafi Bacca's admission that he is not ethnically Tamil as he represented in applying for asylum. Hanafi Bacha characterizes this misrepresentation as immaterial, confusing language with ethnicity, but his asylum application turns entirely on his claim that he was persecuted based on his Tamil ethnicity. Critically, there is no evidence in the record that the Sinhalese-majority government would confuse a Tamil-speaking Muslim for an ethnic Tamil. In

fact, Hanafi Bacca's own expert testified that the Sri Lankans can distinguish the various ethnicities and that Hanafi Bacha's name would identify him as Muslim. Moreover, the second reason the BIA gave for upholding the IJ's adverse credibility finding remains unchallenged: Hanafi Bacha lied in his application about being harassed, detained, or interrogated.

All that is left is Hanafi Bacha's argument that the BIA overlooked his claim for relief under the Convention Against Torture. Though Hanafi Bacha at least directs this contention to the denial of his motion for reconsideration—albeit only in the heading—he faces a different jurisdictional bar. Having raised the point for the first time in this petition for review, Hanafi Bacha did not exhaust his administrative remedies, and so we lack jurisdiction to consider the argument. See, *e.g.*, *Capric v. Ashcroft*, 355 F.3d 1075, 1087 (7th Cir. 2004) (no jurisdiction where petitioner fails to exhaust administrative remedies as to that claim). In any event, the argument is meritless. The IJ and the BIA both considered and rejected Hanafi Bacha's claim for CAT protection because the CAT claim relied on the same evidence found not to be credible in the asylum context. See *Jamal-Daoud v. Gonzales*, 403 F.3d 918, 925 (7th Cir. 2005) (rejecting claim for protection under CAT that relied on same noncredible evidence from asylum claim).

Accordingly, we DENY the petition.